IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.: 1:05cr291-T |
| | ) | |
| BRUNO URIOSTEGUI | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
STOP, SEARCH AND SEIZURE AND CITATIONS OF AUTHORITY**

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully responds to Defendant Bruno Uriostegui's Motion to Suppress Stop, Search and Seizure as follows:

**I. Factual Foundation for the Search**

1. On December 5, 2005, at approximately 3:00 a.m., Dothan Police Officer Sergeant ("Sgt.") A. Hughes, while on routine patrol on U.S. Highway 431, observed a vehicle traveling northbound cross the center lane of travel approximately three to four times before proceeding into the right lane of travel. After finally completing the lane change, Sgt. Hughes observed the vehicle cross the fog line. Sgt. Hughes executed a traffic stop of the 1986 Toyota Supra bearing Georgia registration 4570AJA, by using his emergency equipment of his marked patrol vehicle.

2. Sgt. Hughes approached the stopped vehicle and asked the driver for his driver's license. The driver produced a Georgia driver's license in the name of Bruno Uriostegui.[1] Sgt. Hughes called in Uriostegui's personal information to the United States Department of Homeland Security, Blue Lighting Operation Center (BLOC), for wants, warrants and border crossings. Hughes also conducted a warrants and driver's license check on both subjects.

---

[1]  Sgt. Hughes identified the passenger as Ema Benitez.

3. Sgt. Hughes received a positive record from BLOC that Uriostegui was a previously deported alien. In addition, Uriostegui's driver's license record revealed that his license was in a canceled status. Sgt. Hughes questioned Uriostegui regarding his status in the United States. Uriostegui admitted that he had been previously deported and had re-entered the United States illegally.

4. Sgt. Hughes contacted the United States Immigration and Customs Enforcement (ICE) Special Agent David Henderson, and advised Henderson of the traffic stop.

## II.  Uriostegui's Motion to Suppress

5. Uriostegui contends that (1) the stop of his vehicle was not based upon probable cause; or (2) the stop was not the result of any traffic violation, therefore, the stop, search, and seizure was improper. As a result, Uriostegui seeks the suppression of "(a) any and all physical evidence seized from the vehicle; (b) any and all statements made by Uriostegui after any stop of the vehicle; and (c) any and all evidence obtained as a result or "fruits" of any such seizures." (Doc. #11, filed 01/18/2006). Uriostegui has also referenced a pretextual profile stop in a footnote, with no supporting facts.

## III.  Applicable Case Law

**A.  Probable Cause for the Stop.**

The Defendant alleges that there was no reasonable suspicion to stop him, therefore, any evidence obtained in violation of his Fourth Amendment rights would be the 'fruits of the poisonous tree." The defendant's argument is without merit since Sgt. Hughes stopped the defendant and issued him Unified Traffic Citation and Complaint #M8936495 for Driving While Canceled, in violation of Code of Alabama, Section 32-6-19. Uriostegui was also issued Dothan

Police Department Traffic Warning Notice No. 7844, for Improper Lane Usage.

In <u>Whren v. United States</u>, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996), the Supreme Court held that when "the police have probable cause to believe that a traffic violation has occurred," a warrantless traffic stop is constitutionally reasonable. In addition, the Eleventh Circuit has held that a police officer can stop a vehicle when there is probable cause to believe the car has violated any number of a multitude of traffic regulations. <u>United States v. Strickland</u>, 902 F.2d 937, 940 (11th Cir. 1990). <u>See</u> <u>also</u> <u>Riley v. City of Montgomery</u>, 104 F.3d, 1247, 1252-53 (11th Cir. 1997). Uriostegui claims that the stop was pretextual because he was not guilty of any traffic infraction. His vehicle was stopped because it was weaving across traffic lines. <u>See</u> <u>United States v. Pollock</u>, 926 F.2d 1044, 1047 (11th Cir. 1991) (finding adequate support for concluding that the stop of a weaving vehicle was based on an "objective violation of a statute for which the patrol regularly made stops. . . .") In <u>Whren</u>, the Supreme Court also held that it is irrelevant what else the officer might have in his mind for the stop, as long as he has probable cause for the initial traffic stop. <u>Whren</u>, 517 U.S. at 811, 116 S.Ct. at 1773. Uriostegui's weaving provided reasonable cause for a traffic stop.

In addition, the law is well settled that officers conducting a routine traffic stop may detain an individual for officer safety and to investigate the driver's license, vehicle registration and a computer check. <u>See</u> <u>United States v. Purcell</u>, 236 F.3d 1274, 1276 (11th Cir. 2001).

**B. Equal Protection Clause and Racial Profiling.**

Uriostegui's claim regarding his racial profiling has no substance. Uriostegui has given the Court no facts to support his racial profiling claim – only speculation. Equally, he states no legal support. In the wake of the Supreme Court's landmark decision in <u>Whren</u>, the Defendant

cannot support a claim of racial profiling.  Defendant claims that his race, not his traffic violations, caused his traffic stop.  Cf. Riley v. City of Montgomery, 104 F.3d 1247, 1252 (11th Cir. 1997) (explaining how the Supreme Court's Whren decision "rejected" the Eleventh Circuit's pre-Whren standard for pretextual traffic stops, including the version of that standard set forth in United States v. Smith, 799 F.2d 704 (11th Cir. 1986)).

Indeed, Defendant appears to claim that, even assuming *arguendo* that he committed the traffic violations cited, Sgt. Hughes stopped Defendant's car only because Defendant is Hispanic.  It is absolutely clear from the facts of this case that Defendant Uriostegui was driving his vehicle at approximately 3:00 a.m.  Sgt. Hughes could not have known the ethnicity of the Defendant prior to stopping him.  This type of pretext argument, however, has little or no factual or legal support.  If Defendant did, in fact, use lanes improperly, as Sgt. Hughes claims, there can be little question that there was a lawful and constitutional basis for stopping Defendant's car.  See, e.g., United States v. Harris, 928 F.2d 1113, 1116 (11th Cir. 1991) (upholding traffic stop, distinguishing the Smith case, and finding that the arresting officer had reasonable suspicion to stop a car that he observed weaving into an emergency lane twice, where officer did not begin to follow the car until after he observed the car weave the first time); United States v. Pollock, 926 F.2d at 1046-47 (upholding a traffic stop over pretext challenge where the vehicle was observed weaving on the highway).

The Supreme Court in Whren explained that objective legal facts, like the existence of probable cause or reasonable suspicion, justify traffic stops.  Id. at 818-19.  The subjective motivation of the arresting officer does not matter if the officer has a legitimate basis for a traffic stop under the Fourth Amendment.  Id. at 813.  Indeed, after surveying a number of Fourth

4

Amendment precedents, the Whren Court explained that these cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Id.  Although the Court made very clear that selective enforcement of the law based on race is unconstitutional, the Court made similarly clear that the basis for such a challenge rests outside of the Fourth Amendment.  Id.  Specifically, the Court stated that  "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.  Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  Id.   Since there was a valid stop based upon a traffic violations, the defendant's arguments that the stop was pretextual is without merit.

 Respectfully submitted on this 26th day of January 2006.

        LEURA G. CANARY
        UNITED STATES ATTORNEY


        /s/Tommie Brown Hardwick
        TOMMIE BROWN HARDWICK
        One Court Square, Suite 201
        Montgomery, AL 36104
        Phone: (334)223-7280
        Fax: (334)223-7135
        E-mail: tommie.hardwick@usdoj.gov
        ASB4152 W86T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.: 1:05cr291-T |
| | ) | |
| BRUNO URIOSTEGUI | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler

Respectfully submitted,

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T